May it please the court. Mike Subit, I represent Michael Brady in the proposed class. I'd like to reserve five minutes for rebuttal. Please watch the clock. Thank you, Your Honor. Legal errors permeated both the district court's 2015 denial of class certification and its 2018 refusal to disturb or amend that denial.  Court and this court's precedents on Rule 23b3 predominance, the Washington Supreme Court's decision in Brady v. AutoZone, and state law defining what constitutes a valid meal break waiver. This court should reverse and remand. So we're on a standing theme today. And you've got a dress standing right out of the gate, I think. As you know, the court has already been thinking about that because we issued a letter asking you to deal with it. You have submitted the settlement agreement, which I'm sure all of us have reviewed. Yes. What is it that your client, Mr. Brady, retained in terms of an interest in this case? He has a, Your Honor, we knew about Nehru's and all of its progeny when we drafted the settlement agreement and we drafted it in mind. He has two direct financial interests. One is that under Washington rule of professional conduct 1.8, he is responsible personally for all case costs that my firm has advanced unless the case is certified. It's somewhat of an unusual rule, but I have it here. It says that the client remains ultimately liable for such expenses unless, and this is subsection 2, matters maintained in class actions. This case, if this case is certified, then it is maintained as a class action and he is no longer responsible for $35,000 in costs. I have with me here the bill that I've sent to Mr. Brady last month. We'll be sending him another one this month. The costs are $35,562.73. Unless the case is certified as a class action, he is liable for those costs. That's his first direct financial interest. The second financial interest, as Judge Posner recognized in Eschpenscheid versus direct SAT, which is 688 F3rd 872 875, Seventh Circuit, of course, analyzing this court's decision in Nehru's, the potential for an incentive award, and he said it only needs to be a potential if the case is certified, is also sufficient for Article 3 standing. So again, we have two directs. Is there something in the settlement agreement or something in the record indicating the incentive award agreement? Well, you can't agree to an incentive award, Your Honor, in a class action settlement. It would have to be for the court to decide. One critical thing, there is no release of claims in the settlement agreement. That makes it different than any of the other cases that this court has decided. There is no release of claims. He simply settled his individual claim for value $5,000, a lot less financially than what his cost potential liability is. So I'm not understanding the role of incentive awards. I mean, I've certainly seen in other class cases where the lawyers have told the lead plaintiffs that they think $10,000 would be a good incentive award if the class goes forward. So is there anything like that in the record here? There's nothing in the record. I mean, it's kind of putting the cart before the horse. The court would have to first certify the class, and then there would have to be a resolution in the class's merits for Mr. Brady to be eligible. So you're saying that some inchoate potential for incentive awards gives Mr. Brady standing. Well, that is what Judge Posner said in the Espenshide case. That's not our precedent. I understand, Your Honor. But it's still a financial interest. But second, you don't even have to go that far. The interest in avoiding financial responsibility, I mean, from an income perspective, having no longer being responsible for $35,000 as a matter of law is a personal financial interest. And that is sufficient. Explain to me why he would settle for $5,000 when he is potentially on the hook for $35,000. Seems a little backwards that a plaintiff could end up having to pay out a lot more than he settled for. There's got to be something more here. That, in fact, frequently was the law in discrimination cases until the 2005 Tax Reform Act. There were lots of stories about plaintiffs having to pay more. The only settlement, we settled what we could agree to a settlement for. And that did not include settlement of the fees and the cost. There's no settlement of the cost in the agreement. We reached an agreement that we believed MIMIC would have been the outcome at trial. We believe defendants would have prevailed on their summary judgment for his claims prior to August bankruptcy and after he signed the waiver. And we believe we would have prevailed on most of his meal break claims during the period. And so, Your Honor, again, I can't imagine what is a more direct financial. The law is the law. Again, it is RPC 1.8. I don't think that law makes a lot of sense. But that is the law. And that's the law I've been dealing with since doing 20 years of class actions. The fact remains, in every one of my class actions, we send the client a bill until the case is certified. And then we don't. And so it is a direct financial interest within the meaning of Article 3, Your Honor. And again, it's an unusual rule. I'm not practicing other jurisdictions. I'm not aware of others. I guess what I'm getting at is it seems to me that Brady's interest would have been best served to say, OK, I'll take the $5,000. Release me from that. And then the new named plaintiff would carry on the burden to pay the costs. The RPC, Your Honor, governs the relationship between Mr. Brady and my firm. And so the settlement agreement couldn't get him out. And the defendants were not willing. You could have agreed to release him from that. I'm not allowed to do that under the rules of professional conduct until it's maintained as a class action. Right. And in terms of the settlement, they were willing to pay $5,000. They weren't willing to pay $40,000. And that's where we were. And this was an arm's length settlement for value. So again, I don't think there's any question about the Article III. And we worked very hard to sail this between the Scylla and Charybdis of no personal stake and no final order. And we believe we did. But what it does do is, I mean, the confusing part here is it gives the plaintiff's counsel the incentive to keep the case live for Brady by not releasing him. Now, you're telling me you can't release him. I can't. So I'm not aware of that. It's unethical. As I said, it's an unusual rule. And it's unethical. Once the case is certified as a class action, then my ability to repay it, his requirement to pay it, is contingent on the rule. Again, RPC 1.8. So I believe we do satisfy Article III. Moving on to the merits, Washington law requires a 30-minute meal break within five hours of the beginning of the shift and five hours after the first. Hold on. It requires it or it allows it? Requires it. OK. Let's back up, because that was not my understanding. Where is the required? That is in Brady v. AutoZone, Your Honor. That is what we went to the Washington Supreme Court on. And they held, consistent with the Paulino case, that it is an affirmative duty to provide a meal break within five hours of the beginning of the shift. It shall be allowed, is what the regulation states or the statute. So they say it can be waived, so there's no requirement. Unless validly waived, it is a requirement. We certainly agree. That's my point. Oh, I'm sorry. You have to allow it. Yes, there is an affirmative duty to allow it, but there's not an affirmative duty to ensure that they take it. Absent a waiver, there is, Your Honor. I mean, again, that's an important point. There is an affirmative duty. That's what the dispute was in the district, the error in the district court's order. I mean, are you telling me every day you've got to look at the time cards and if somebody didn't take one within five hours, you've got to call them into the office and say, hey, tomorrow you've got to take your break? Absent a waiver? Absolutely, Your Honor. But in Washington law, apparently, or at least the opposing counsel argues that a waiver can be oral, can be written, can be implied. And they cite some cases where implied waiver is in Polino. So the absent a waiver swallows a lot of territory. We don't agree, Your Honor. And again, the Department of Labor and Industries, which not only wrote the regulation but the waiver policy, and the policy of the LNI is the only source for waiver in Washington law. But Polino says a waiver may result from an express agreement or be inferred from circumstances indicating an intent to waive. That's what they cite. And the Department of Labor and Industries, in both the Brady case and in this case, and in their policy, says you need a prior agreement. They say they recommend but does not require. This is from the state Supreme Court. Recommends but does not require obtaining a written request from an employee who chooses to waive the meal period. So they don't indicate that such a prior documentation is required. Your Honor, there's a difference between a prior agreement and a prior documentation. The written requirement is recommended. The prior agreement, that there has to be an actual agreement, is required under the Washington law. And so, no, we agree it doesn't have to be in writing. It's preferable it would be in writing. I want to just state, Your Honor, just to be clear, that the whole issue of waiver is inapplicable to the second meal break subclass. We do have two separate subclasses here. One, the first meal break subclass, where they have a lawful policy but unlawful practice about failing to ensure the breaks. The second meal break policy is an illegal policy that they allowed breaks only after the 11th hour. And as the Cummins and other cases we've cited said, there's no possibility of waiver for a break the law the employer did not allow you to take. I'd like to reserve the remaining time for rebuttal, Your Honor. Thank you. Could you start with the standing issue, please? Yes, Your Honor. AutoZone agreed in the settlement. I'm sorry. Could you identify yourself for the court? That's my fault. My name is Todd Nunn. And along with my colleague, Patrick Madden, we represent AutoZone, the appellee defendant in this matter. AutoZone agreed in the settlement agreement that it would not use the settlement as grounds to contest jurisdiction in this court. So I don't believe that I can advocate on that issue. Well, you can address the questions of the court, however. And I have a question as to whether opposing counsel cites an ethical rule saying that Mr. Brady is required to pay the class cost of $35,000 unless there's a class certified. Could you advise us about the nature of this ethical rule and how it works in these class actions? I cannot advise on the action of that ethical rule. I'm sorry. I can say that the- So if we ordered supplemental briefing for both parties to explain this ethical rule, you couldn't respond? Well, it does put us in an awkward position, Your Honor, in that we agreed we wouldn't use the settlement agreement as a reason. Certainly, we have to obey the orders of the court and- Well, that's the problem here is that we have stand- I mean, it's not an argument you can- either party can waive. Standing is something we've got to find. And so I understand that you don't need to be in here arguing it, but we've got to find it. And so if the parties aren't going to help us, I suppose we could go appoint the State Bar Association to come in and explain the rule to us. And we never agreed to jurisdiction and did not mean to usurp this court's authority to decide its own jurisdiction in any way. We simply- No, but it's just hard to ask the questions and not be able to get an answer. And I do apologize for that, but we felt that that would be breaching the settlement agreement. I can point out, as a way of answer in a factual matter, is that the stipulated judgment does provide in the stipulated order that each side bears its own costs and fees. I don't know if that addresses the issue specifically, but we are not prepared to talk about that ethical rule. Certainly, if you order supplemental briefing, we're not going to violate a court order. And I do apologize for the awkward position it's put us in, but that is what we agreed. So I would like to move on to the merits. There's three points I'd like to discuss. First is that the district court, Judge Richard Jones, did exactly as this court is instructed in evaluating evidence and conducting a rigorous analysis of the 23B criteria. The second point is that Judge Jones correctly found that the manipulated data, these lists of time totals that was submitted by the plaintiff, cannot establish on a class basis a prima facie case under the Washington Supreme Court's test enunciated in Brady v. Autozone. And third, that Judge Jones correctly found that waiver is a predominance-defeating affirmative defense, as was discussed a little bit before, requiring substantial individual evidence. First, Judge Jones correctly exercised his discretion and conducted a rigorous analysis, holding plaintiff to his burden to affirmatively demonstrate through evidentiary proof that the class meet the requirements of Rule 23. He assessed the evidence submitted by both parties. And it's important to recognize what evidence the plaintiff submitted. Plaintiff essentially submitted lists of names of employees, dates, and then total times of over any time there was over five hours. But these were not time records. These were Excel spreadsheets that plaintiff generated through a number of processes that they themselves, using bookkeepers and interns, generated. So Judge Jones looked at that evidence, looked at the evidence submitted by Autozone, and determined that the evidence was unreliable. Defendants moved to strike, but the judge did not rule on the motion to strike and did not determine admissibility, as this court instructed in Sallie. He considered, certainly would have considered admissibility, but did not rule on admissibility, but found that the evidence could not support the plaintiff's burden to prove a prima facie case. He denied class certification. Plaintiff sought review to this court under 23-F, and this court denied interlocutory appeal. Judge Jones then granted plaintiff's motion, gave them another chance, granted their motion to go in front of the Washington Supreme Court to determine the state law issues. And the Washington Supreme Court agreed with Judge Jones' ruling that there was no strict liability under Washington law. But did suggest that that would be enough to make a prima facie case, is that right? I'm sorry, I didn't hear the first part. So if there was evidence that the five hours had passed without a lunch break, that that could make a prima facie case, right? The court held that plaintiffs needed to introduce evidence that they did not receive a meal break, a timely meal break. So if there was evidence that showed that they didn't receive a break, that could meet a prima facie case. But plaintiff didn't submit evidence that showed that. Plaintiff submitted evidence that was, again, a list of names and time totals. And they want to walk into the courtroom and drop it on the table and say, here's a list with time totals. We win. And that's because strict liability. But the Washington Supreme Court and Judge Jones said, no, there is no strict liability. You have to come forward with a prima facie case. And plaintiff's own client, plaintiff's attorney's own client testified that those time totals don't necessarily mean someone didn't receive a break. So did the district court say, was the basis of its decision that Mr. Brady had not made a prima facie case? There were two bases for the decision. First, that Mr. Brady could not make a prima facie case on a class basis. He didn't rule on any merits. He didn't decide whether anyone did or did not receive a meal break. Simply that the evidence as submitted, this conclusory evidence that substantial other evidence, including plaintiff's testimony, did not show that someone did or did not receive a break. He found that that could not prove a case on a class basis and therefore didn't satisfy Rule 23. And he ruled that the waiver defense that the Washington Supreme Court stated, in each instance, a defendant can bring forward a waiver defense, that would require significant individual evidence. And so that also defeated predominance. So there were two bases for the ruling. Now, plaintiff's testimony was that if you look at these time periods on this list of 501, 506, 8, 12, whatever time period it is, that that doesn't necessarily tell you whether someone received a timely meal break. Because he himself took breaks on the clock. He took paid meal breaks at times. And that would not show a clock in and clock out. The opposing counsel says there has to be some written agreement, some writing that establishes a waiver of a meal break under the agency regulations. Do you agree? We do not agree. ESC 6, which is the administrative policy for meal breaks, states that a writing is recommended but not required. The Washington Supreme Court, in the Brady decision, noted that a writing is recommended by the Department of Labor and Industries, but is not required. And it cited Paulino versus Brinks, which stated that a waiver, it adhered, basically, to the 60 years of waiver law under Washington law, starting in Bowman versus Webster, that says that waiver is simply a voluntary relinquishment of a known right that can be done express, doesn't talk about writing or verbal, but in express, or can be inferred from circumstances, including conduct. And DLI, in its briefing to the Washington Supreme Court, conceded that a writing isn't required, but that testimony can also support a waiver defense. So the Washington Supreme Court didn't limit waiver in any way. And I guess I'll quote from ESC 6. All it states is, if an employee wishes to waive, then the employer may agree. It doesn't just talk about writing. It doesn't talk about verbal. It doesn't talk about an agreement in advance. It simply says, if an employee wishes to waive, then the employer can agree to that. An employer can agree to it in advance. An employer can make it known that, if you want to switch your break and it doesn't impact other people, you can go ahead and do that. As long as the employer is agreeable, an employee may waive. That's all the guidance says. So I want to go back to the prima facie case issue, because I'm not quite sure I fully understand what your position is. Is your position that because waiver can happen in a bunch of different ways, including informally, that's why the evidence presented doesn't meet a prima facie case? That's not the sole reason. What plaintiffs do is they put this list together. And we pointed out in our motion to strike that there were errors that caused those time totals to be incorrect. They put in counter evidence. The judge assessed that. These records are not in front of this court, so you can't assess them yourselves. There are examples, however, at, if you want to take a look at exactly what you see, at SER 1185 to 1199, which was part of our motion to strike. In any event, they say that these time totals, 501 to 14 or whatever, show that someone didn't receive a timely meal break because someone needs to clock out to take an unpaid meal break. But the evidence, including in really primarily from their own client, is that that doesn't necessarily mean someone didn't get a meal break. You don't always clock out. He had meals on the clock, paid meal breaks. No clock out there. It would be eight straight hours, 10 straight hours. He got a timely meal break, but it doesn't show on the clock time. He also testified that other employees in his store ate on the clock. So on that balancing, or on the burden shifting analysis that the Washington Supreme Court set, why wouldn't you figure that out on the second prong where the employer comes and says this wasn't a violation? Because plaintiffs- At class certification, you are not weighing the strength of evidence in the way that you're gonna do when you actually prove a case. We're trying to figure out if there's enough to address the elements of class certification. And so I'm struggling a little bit with, it seems like some of your arguments go to the weight and strength of this evidence, the merits of this evidence, as opposed to how the evidence would be used in a class analysis. Well, this evidence wouldn't benefit a class analysis because again, their claim is they can prove their case with just this list. And this list doesn't show when people actually received a meal break. There are times, there was testimony that there are times when block time is put in. Wouldn't show a meal break, but people got a meal break. There were times when manual time was added because of a missed time clock. That wouldn't show. Isn't your point just that for purposes of class certification, this is an individualized inquiry and therefore it's not subject or shouldn't be subject to class certification because you can't, I mean, you can't just look at one thing and say, okay, these people fall on this side. These other employees fall on the other side. You, it's so individualized that it doesn't warrant class certification. Well, that's exactly right. And that's what Judge Jones said. He said, if you look at this list, you don't know one way or the other. You have to go to individual evidence. There has to be more evidence. And ultimately it breaks down into an individual question because if you determine from one person on this list that they did or did not get a break, it has no impact on anybody else. And so each and every individual has to have an individual determination regarding whether they received a meal break for there to be a prima facie case. If you were wrong that written agreement was required beforehand, presumably it wouldn't be individualized because then you could pull up just data that said, hey, these are written waivers. These are non-written waivers. But if you're correct that implied waivers satisfy that, then it seems like that makes class certification pretty difficult here. Absolutely. There were the two bases. One, prima facie requires individual evidence because of the way plaintiff put their cases together. The other is that the defensive waiver requires individual evidence because there is absolutely, the Washington Supreme Court held- But it's more the type of evidence. I mean, if written evidence was required, it would still be individualized, but it'd be pretty easy to determine. But if it's implied, then I mean, that could be satisfied a hundred different ways, I assume. Oh, I agree. And verbal as well. And there's substantial declaration testimony and plaintiff's testimony that he would verbally waive to work through lunch to leave early. In the Washington Supreme Court's burden shifting framework though, don't all of those arguments go onto the employer's defenses as opposed to the prima facie case? They are. The plaintiff's, the defendant's burden to prove, but affirmative defenses must be considered. And as this court held in true health, if an affirmative defense requires individual evidence, then it is predominance defeating. And there is substantial evidence in the record showing all of the individual facts. The people that testified, I needed to pick up my child early from school so I would verbally waive. Or I needed to go to a medical appointment so I verbally waive. In addition to the implied waiver, which is demonstrated by plaintiff's own behavior in that he would often stay past his shift and stay past the meal break at closing time. So he would be the one to grant the waiver and ask for the waiver. So because he was a manager, although an hourly employee. And so those types of circumstances could show implied waiver inferred from conduct. And as Judge Nelson said, a million different facts could be impacted. Could there be a subclass and did the district court error not considering this of, I mean, even if written isn't required, presumably there were some written waivers granted. And so would there be a subclass? Well, I guess it wouldn't work that way because if there's a written waiver, they wouldn't be part of the class. So, all right. Well, there were 500 written waivers in the record, but thank you. Okay, we thank you. Thank you, Your Honor. And we would be happy to do supplemental briefing on the subject matter jurisdiction. Well, what about, do you agree that if the defendants answer our questions that they're violating the settlement agreement? No, I would not. I mean, I think this is a question of what the law is in Article III. And I don't think the settlement agreement creates an Article III problem. You wouldn't be opposed if we got counsel back up here for a minute and perhaps staved off a supplemental briefing. I think, you know, this area is quite nuanced. I actually expected supplemental briefing on this. And so I would actually request supplemental briefing. Let me get to the merits because first of all, these are not, these manipulated data. Okay, let's just be very clear. They have a policy, only unpaid meal breaks. Paid meal breaks are not allowed under AutoZone's policies. Well, but that doesn't mean that in by practice it doesn't happen. Sure, but it's a policy violation. And there's no evidence, they have no data saying that how much it happened. An appeal paid meal break under Washington law has to be 30 minutes and unerupted. Let me first deal with the prima facie case because that's the most important part. The Washington Supreme Court said, we satisfy the prima facie case by providing evidence that someone did not receive a timely meal break. That was in the context of the very time records here. This idea about manipulated data is not the posture of this case. What we did was simply take, they are required to punch in and punch out for meal breaks because they're unpaid. And so we took the data that they gave us showing when you got punched out, all we did is put it in an Excel spreadsheet. There's no manipulation. They moved to strike it, the district court did not grant the motion. The Supreme Court has said that where the defendant has individualized offenses that may defeat predominance. And that's the argument I understand the other side, at least in part, to be making. Absolutely. Let me get back to the waiver argument. Let me be very clear, Your Honor. We did not have to be a written agreement, but against under, the only source is the text of ES6. And the Department of Labor and Industries has written a brief, not only in the Supreme Court, but in this case saying the district court misinterpreted the waiver rule that they wrote. That's pretty powerful evidence. There has to be a prior agreement. Washington Labor and Industries rejects implied waiver. Verbal waiver is something different. Implied waiver simply means waiver through default. I didn't take a break that day, that means I waived it. The only source for that is Judge Layton's opinion in the Eisenhower case, and the reason he said you could do that is he said there was no duty to provide a break. The implied waiver analysis went out when the Washington Supreme Court rejected Eisenhower in the Brady case. The opposing counsel says the Washington Supreme Court in this case cites Paulino, and Paulino acknowledges implied waiver. There's two different versions of implied waiver, Your Honor. They didn't actually, I mean, that's unfortunately dicta, Your Honor, that one sentence. And Washington, I mean, again, you have to go back to the policy. There's only one source here is ESC6, and it says there has to be a prior agreement. I didn't write that. Yeah, but I guess the point is, unless you're gonna get into a written agreement, it becomes an individualized question. You're right. So once it becomes an individualized question, you have a problem on class certification. Except when their evidence, except as to the written waivers, falls completely short of meeting the legal standard. And that's, True Health says that you can only consider whether the defense that is predominant is defeating based on the evidence asserted. We agree the written waivers are easy. And we agree most of them are valid. There's a couple that says, I don't care when I eat lunch, that's not valid. The forms, we agree, that's easy. The verbal waiver, verbal waivers can occur, but there's literally none of the evidence that they submitted of verbal waivers is sufficient to meet the standard. But do they have to submit the evidence, or do they just have to come in and say, listen, this is part of the evidence that's required, and we're going to raise this as an affirmative defense. It's an individualized inquiry, and that defeats predominance. I think under True Health, the answer is they have to come up with the evidence. Your Honor, here's the problem, and it gets back to Mount Clemens. We asked them in discovery who verbally waived. They said, we don't know, and we can't find out. The whole point is, is what they're using, and this is what Mount Clemens teaches you, is that if they followed best practice and even kept accurate records who verbally waived, we wouldn't be in this situation. It allows companies who don't follow best practices to get out from a class action, and punishes those who do, because then predominance, it wouldn't be a predominance-defeating defense. That's the problem. Again, what we have here, and again, none of this is relevant to the second meal break class, because it's an illegal policy. Thank you, Your Honor. Thank you. Before you leave, let me consult. Are you okay with that? Let me see, ask the other side. We'd like to hear from you, since opposing counsel has said that he doesn't believe that your addressing the jurisdictional point would violate the settlement agreement. Well, in light of that, although I don't have a solid argument to make, at this time, on the ethical rule, because there was no briefing in advance, and this is kind of out of left field, frankly, but we would participate in a supplemental briefing happily, given that a plaintiff won't hold us as violating the settlement agreement. And that's fine, you don't have any, maybe we should just wait for supplemental briefing. I think that would be a better approach, from my perspective. All right, we thank both sides for their argument. The case of Michael Brady versus AutoZone Stores and AutoZoners LLC is submitted.
judges: Ikuta, R. Nelson, Hunsaker